GIBSON, APPELLEE, *v.* THE NATIONAL LIFE & ACCIDENT INS. CO., APPELLANT.

(No. 996—Decided June 5, 1952.)

*Messrs. Casper & Casper,* for appellee.
*Mr. Ervin L. Bramlage,* for appellant.

HILDEBRANT, P. J. This appeal on questions of law is from a judgment entered on a jury verdict award-

ing to plaintiff the death benefits provided in a policy of insurance issued November 29, 1948, on the life of Bobby L. Gibson, seven-year-old son of plaintiff, who died on January 26, 1949, and containing the following provision:

"This policy shall take effect on date of issue, provided the insured is then alive and in sound health, but not otherwise."

A similar verdict obtained at a former trial was set aside and new trial granted by the court as being manifestly against the weight of the evidence, so that the question of the weight of the evidence is not considered by this court by reason of its decision in *Snow* v. *Cincinnati Street Ry. Co.*, 80 Ohio App., 369, 75 N. E. (2d), 220.

Error is assigned to the refusal of the Common Pleas Court to grant defendant's motion for a directed verdict at the close of all the evidence, and its motion for judgment *non obstante veredicto*.

The provision as to sound health being in the nature of a warranty, the burden of proof rests upon the defendant to show a breach thereof. *Mumaw* v. *Western & Southern Life Ins. Co.*, 97 Ohio St., 1, 119 N. E., 132; *Frudiger* v. *National Life & Accident Ins. Co.*, 73 Ohio App., 138, 55 N. E. (2d), 143.

Examination of the record discloses that plaintiff testified on direct examination as follows:

"Q. What was his condition—Bobby's condition—so far as you know at that time when Mr. Hotchkiss delivered the policy? A. He was going to school."

And, on cross-examination:

"Q. In that application you stated that Bobby was in sound health, did you not? A. To the best of my knowledge.

"Q. Did you make that statement or did you say, Yes, he was in sound health? A. I said as far as I

knew he was well.  I said that to all of the policies—application.''

Karl D. Hotchkiss, the insurance collector and salesman who took the application November 15, 1948, and delivered the policy November 29, 1948, testified on call of the plaintiff as follows:

''Q. Did you see Bobby Ginson [*sic*] on several occasions?  A. Yes, sir.

''Q. What was his appearance so far as you were able to observe?  A. Good.

''Q. What was he doing?  A. I wouldn't recall that any more than other children.

''Q. Was he a robust-looking child?  A. So far as I could see—he wasn't thin at all.

''Q. Did he appear to be of sound health?  A. Yes.''

The above is all the evidence offered by the plaintiff on the subject of sound health.

To sustain the burden resting upon it, the defendant offered the death certificate in evidence showing the immediate cause of death as lobar pneumonia due to chronic nephritis, due to gastro enteritis.  The insured's own doctor then testified to treating him from the year 1946 for chronic nephritis, during which time he was three times a patient in Children's Hospital, to wit: In June 1946; in October 1948, less than a month before the application for insurance was taken; and, lastly, in January 1949, three days before he died.

The doctor further explained that the immediate cause of death shown on the death certificate as lobar pneumonia was the terminal disease in any wasting debilitation ailment, such as chronic nephritis, which usually carries the patient away.

The record shows the Children's Hospital admissions, and is replete with evidence of the doctor attending the insured.

On cross-examination, the plaintiff, in answer to the

question, "Did Dr. Schaen tell you he had a kidney disease?" answered, "Yes." Also, plaintiff admitted the truth of the medical testimony as to hospitalization and treatments.

In *Magyar, Admx.,* v. *Prudential Ins. Co.,* 133 Ohio St., 563, 15 N. E. (2d), 144, the court said in the opinion at page 564:

"The undisputed evidence in the *Magyar case* is that the cause of the death of the insured was myocarditis, and there is no contradiction of the positive testimony of his attending physician that the insured had suffered from and had been treated for that very disease during the period of approximately two years prior to the issuance of the policy in question. This physician testified in detail as to the physical conditions developed as a result of myocarditis and observed by him upon examination of the insured at various times during the period stated, and that the conditions found by him upon examination of the insured seven days prior to his death 'so far as the heart was concerned' were the same as found earlier, 'only in advanced stages.'

"It is disclosed further that the examination of the insured by two other physicians within the same period resulted in a finding of high blood pressure by one of them and they both prescribed 'light work.' The insured was not employed at any work subsequent to March 3, 1932, and the reason for his absence from work, assigned on the record of his employer, was 'sickness.' The only other evidence touching the question of the condition of the insured's health at the time of the issuance of the policy was the testimony of his son and of a former agent of the defendant company that the insured then looked or appeared in good health, and the testimony of his widow that 'he was in good health,' before his last sickness.

"It is to be observed that the only evidence of any

probative effect respecting the actual physical condition of the insured at the time of the issuance of his policy was that of the physicians referred to, and therefore that there is no conflict whatever in the evidence adduced which may be considered to be of probative value upon the sole issue in that case."

In the *Vida case,* reported in the same opinion with the *Magyar case, supra,* the court found a conflict in the evidence presenting a jury question, and reached a different conclusion.

In the *Frudiger case, supra,* the court found the defendant had failed to sustain the burden of proving a breach of the "sound health" provision by failing to produce medical testimony on that point, the inference being that if it had the court would have been required to reach a different conclusion.

In the case at bar, the medical evidence adduced by defendant seems absolutely conclusive that the insured was not in sound health at the time of execution of the policy, so that, under its terms, it never became effective as such. While the court considers it immaterial to this issue, the evidence of unsound health at the time the application was made is so overwhelming as to draw into question the good faith in making it.

It, therefore, appears here, as in the *Magyar case, supra,* that the only evidence of any probative effect respecting the actual physical condition of insured at the time the policy was issued was the medical evidence offered by the defendant, so that there cannot be said to be any conflict in the evidence of probative value on the issue of sound health.

We, therefore, believe the rule in *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, should have been followed, and it was error to refuse to grant the motion for directed verdict at close of all the evidence or the motion for judgment *non obstante*

*veredicto*, so that the judgment is hereby reversed, and final judgment is entered for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., and ROSS, J, concur.

MATTHEWS, J., dissenting. The only error assigned is that the court should have instructed the jury to return a verdict for the defendant on the ground that the evidence shows that the insured was not in sound health at the time of the delivery of the policy.

The burden of proving that the insured was not in sound health was upon the defendant. *Mumaw* v. *Western & Southern Life Ins. Co.*, 97 Ohio St., 1, 119 N. E., 132. To justify the sustaining of such a motion in any case, it must appear that there is no substantial evidence of sound health. This, it seems, certainly should be the rule when, as in this case, the motion is made by the party upon whom the burden rests and the credibility of witnesses is presented.

In this case, there is evidence by the insured's mother that he was in good health. If her testimony is accepted as true, the jury could, within reason, decide that whatever his ailment, it was not such that tended to weaken his constitution and increase the insurer's risk.

This verdict is the second one that has been found in plaintiff's favor, and while I have some doubts, I have concluded that it cannot be said that there is no substantial evidence of good health.

For these reasons, the judgment should be affirmed.